UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEALTH CALL OF DETROIT, INC.,

    Plaintiff,                                                      Civil Action No. 16-CV-11345

vs.                                                              HON. BERNARD A. FRIEDMAN

FARMERS INS. EXCHANGE,

    Defendant.
_____/

## **OPINION AND ORDER DENYING DEFENDANT FARMERS'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Farmers Insurance Exchange's motions for summary judgment and for leave to file a nonconforming reply brief [docket entries 28 and 38]. Health Call has responded, Farmers has replied, and Health call has filed a sur-reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

## **FACTS**

The following facts are summarized from Health Call's complaint and briefing:

In July 2011, six-year old Jaden was in a terrible car accident when another car going 70 mph smashed into his family's car. He was thrown from the back seat underneath the dashboard. He suffered skull fractures, sacral factures, and a hemorrhagic contusion in his right temporal lobe. Medics onsite unsuccessfully tried to resuscitate him several times. He was airlifted to the University of Michigan Hospital, where he spent a week in a coma. Jaden was diagnosed with severe traumatic brain injury. Because Jaden still suffers many side effects of the accident, his "physicians have prescribed 24-hour attendant care services, primarily for supervision purposes." Pl.'s Br. p. 4.

In October 2011, Jaden's mother Velma Sears-Roddy—acting on his behalf—assigned to Health Call "any rights [Jaden] may have as a result of Health Call providing services." *Id.* at Ex. M. This included the right to "collect any and all benefits." *Id.*

In July 2012, Velma—acting as Jaden's next friend—filed a complaint against Farmers, who was refusing to pay no-fault benefits. In January 2014, the case settled, and Velma—acting on Jaden's behalf—signed a partial release of claims against Farmers.[1] *Id.* at Ex. K. For the next year, Farmers paid for Jaden's attendant care. In January 2015, Farmers sent a letter to Velma, stating that based on the analysis of its physician, Dr. O'Leary, it would no longer pay for attendant care for Jaden. In response, Jaden's longtime physician, Dr. Pelshaw, wrote Farmers, explaining Jaden's need for attendant care, but to no avail.

In February 2015, Health Call began providing services to Jaden. In February 2016, Health Call filed the instant complaint against Farmers, asserting a single violation of Michigan's No-Fault Act. In June 2017, Velma signed another assignment of benefits to Health Call. *Id.* at Ex. N. This assignment states: "In consideration for the services provided to [Jaden] by Health Call, [Jaden] assigns and transfers to Health Call all of [his] rights and interest in his[] insurance benefits for services rendered by Health Call." *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states that any party moving for summary judgment must identify "each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party must support its assertions by:

---

[1] The release explicitly did not apply to Health Call's services.

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party satisfies this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

### I. Law

The No-Fault Act established a system of mandatory no-fault automobile insurance. Mich. Comp. Laws § 500.3101 *et seq.* This insurance is also called personal protection insurance. *Id.* "Under personal protection insurance[,] an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." Mich. Comp. Laws § 500.3105(1). Under Mich. Comp. Laws § 500.3107(1)(a), personal protection insurance benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and

accommodations for an injured person's care, recovery, or rehabilitation." *Bronson Methodist Hosp. v. Auto-Owners Ins. Co.*, 814 N.W.2d 670, 677–78 (2012).

Decades of Michigan Court of Appeals cases had found that healthcare providers could directly sue no-fault insurers to recover no-fault benefits. The Michigan Supreme Court overruled that line of cases in *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 895 N.W.2d 490, 493 (Mich. 2017), stating: "[T]he statutory no-fault scheme reveals no support for an independent action by a healthcare provider against a no-fault insurer. . . . We therefore hold that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act."

**II.   Analysis**

a.   Retroactivity of *Covenant*

The Court finds that *Covenant* applies retroactively. It is axiomatic that when the Court sits in diversity jurisdiction it applies Michigan law as the Michigan Supreme Court would. *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012). Michigan Court of Appeals rulings inform this inquiry, but are not binding. *Ososki v. St. Paul Surplus Lines*, 156 F. Supp. 2d 669, 674 (E.D. Mich. 2001).

The Michigan Supreme Court has, in light of *Covenant*, vacated and remanded cases to the Michigan Court of Appeals for reconsideration. *See Spectrum Health Hosps. v. Westfield Ins. Co.*, 897 N.W.2d 166, 167 (Mich. 2017); *Bronson Methodist Hosp. v. Mich. Assigned Claims Facility*, 897 N.W.2d 735 (Mich. 2017). This demosntrates that the Michigan Supreme Court considers *Covenant* retroactive. Indeed, the Michigan Court of Appeals has explicitly applied *Covenant* retroactively. *See Eubanks v. State Farm Mut. Auto. Ins. Co.*, No. 330078, 2017 WL 3044126, at *3 (Mich. Ct. App. July 18, 2017) ("In accordance with *Covenant*

4

*Med. Center*, we hold that intervening plaintiffs in this case have no statutory cause of action against defendant for recovery of personal protection insurance benefits under the no-fault act.").

Finally, under *Bezeau v. Palace Sports & Entm't, Inc.*, 795 N.W.2d 797 (Mich. 2010), the Court must weigh whether applying *Covenant* retroactively will result in injustice. Health Call has alleged both statutory and contractual theories of liability. Because it still has its assignment claim, granting summary judgment as to the statutory claim does not work an injustice. Thus, Health Call's statutory claim is dismissed.

      b. The Assignment

*Farmers's Standing to Challenge the Assignment.* Under Sixth Circuit case law, "[a]n obligor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010) (quotation marks omitted). Here, Farmers is the obligor to the assignment at issue, and as a defense it argues that the assignments are invalid. Therefore, contrary to Health Call's assertions, Farmers has standing.

*Validity of the Assignment.* The parties are well acquainted with the law of assignments and the Court's role when it exercises diversity jurisdiction, so the Court will not repeat them.

The question here is whether, as Farmers argues, the assignments are invalid because parents cannot assign their children's rights to no-fault benefits. There is no genuine dispute as to any material fact. The parties agree that Velma—acting on Jaden's behalf—assigned to Health Call in October 2011 and June 2017 Jaden's rights to no-fault benefits. The only question is whether Farmers is entitled to judgment as a matter of law because the assignments were invalid.

The Court finds that because Velma's June 2017 assignment was valid, Farmers is not entitled to judgment as a matter of law.[2]

No Michigan case law directly addresses Farmers's argument. The parties extensively discuss *Woodman ex rel. Woodman v. Kera LLC*, in which the Michigan Supreme Court found that "a parent lacks authority to bind his child by contract." 785 N.W.2d 1, 2 (Mich. 2010). At first blush *Woodman* seems relevant. But as Health Call notes, *Woodman*'s issue was "whether a minor can be bound by a contract signed on his behalf by a" parent, *id.* at 5, not whether an obligor can be bound by such a contract. In *Woodman*, the minor, through his parent, sought to avoid enforcement of the contract his parent signed. Here, neither the minor nor his parent opposes enforcing the assignment. These are different scenarios, so *Woodman* is of no help. Further, the court in *Woodman* stated that contracting parties may transfer the rights of third parties so long as they had the "legally cognizable authority to do so." *Id.* at 8. Under Michigan law, parents do have the authority to "sign[] contracts for or on behalf of the minor." *People v. Abraham*, 234 Mich. App. 640, 651 (1999). *See also Lucas v. Awaad*, 299 Mich. App. 345, 360–61 (2013). The Court recognizes the tension between these two propositions: parents cannot contractually bind their children, yet parents may sign contracts on their children's behalf. The Court concludes that parents may contract on their child's behalf—as happened here—but if the child, through the parents, wishes to avoid that contract, the parent's signature will not prevent it from doing so.

This conclusion is supported by the only Michigan case of which the Court is aware that explicitly mentions this question. In *Hillsdale Cmty. Health Ctr. v. Pioneer State Mut. Ins. Co.*, No. 285681, 2009 WL 2873002, at *4 n.4 (Mich. Ct. App. Sept. 8, 2009), the Michigan Court

---

[2] Therefore, the Court need not discuss the October 2011 assignment.

of Appeals assumed that a parent's assignment of no-fault benefits on behalf of her minor child is valid and binding on obligors.[3] Critically, in *Hillsdale*, the minor and her parent were not seeking to avoid the contract. Therefore, the court did not find the contract invalid.

Other states disagree on a parent's right to assign insurance benefits on behalf of their child. For example, the Mississippi Supreme Court has held that because a child is the "only party entitled to [insurance] proceeds via his injuries, his parents ha[ve] no right to assign them." *Cooper Tire & Rubber Co. v. Striplin By & Through Striplin*, 652 So. 2d 1102, 1104 (Miss. 1995). But several other states' courts have held that because parents are responsible for their children's healthcare costs, they own and may assign corresponding causes of action to health care providers. *See, e.g.*, *Kennedy v. Kiss*, 412 N.E.2d 624, 628 (Ill. App. 1980).

The Court finds this latter reasoning more persuasive. Here, Jaden is not on the hook for medical bills, but Velma. *See Newman v. Hoholik*, 138 Mich. App. 66, 69 (1984). Of course, if Velma had not made the assignments, she herself could sue Farmers. Velma owned a cause of action and, in effect, assigned it to Health Call.

Further, Farmers's argument that Jaden cannot contract as he is a minor and Velma cannot contract for him as she is a third party would effectively bar Jaden from assigning what everyone agrees is a legitimate cause of action. Under Michigan law, however, "[g]enerally, all legitimate causes of action are assignable." *Grand Traverse Convention & Visitor's Bureau v. Park Place Motor Inn, Inc.*, 176 Mich. App. 445, 448 (1989). Farmers has not shown why this cause of action should be treated differently. The case law strongly militates against Farmers's position.

---

[3] Though *Hillsdale* was decided in 2009, a year before *Woodman*, *Woodman* merely summarized and repeated over 100 years of Michigan law; its rule was nothing new and, thus, would not have overturned *Hillsdale*.

Finally, the Court notes that Farmers accepted the October 2011 assignment as valid. It paid $30,000 for that assignment, treating Velma as though she had the authority to transfer Jaden's rights.

In sum, Velma, acting on Jaden's behalf, assigned his rights to insurance benefits and her right to seek reimbursement from Farmers to Health Call in exchange for healthcare services. Because neither she nor Jaden have expressed a desire to void that assignment, it is valid.

*June 2017 Assignment as Basis for the Complaint*. As stated above, in addition to alleging a statutory theory of liability, Health Call also alleges a contractual theory of liability: "Jaden Sears has assigned his rights to obtain payment for these medical benefits to Plaintiff." Compl. ¶ 10. Velma—acting on Jaden's behalf—twice assigned these rights: first in October 2011, and second in June 2017.

Farmers asserts that the October 2011 assignment is invalid because, in violation of Michigan law, it assigns Jaden's rights to all future insurance benefits. Farmers does not argue that the June 2017 assignment is invalid, but only that Health Call's complaint cannot rely on it because the complaint was filed almost fourteen months before Velma made the June 2017 assignment.[4] In sum, the narrow question here is not whether Health Call may switch theories of liability (as Farmers implies in its briefing); rather, it is whether Health Call may base its April 2016 complaint on the June 2017 assignment.

The Court finds, first of all, that from day one Farmers has known that at least one of Health Call's theories was based on an assignment of Jaden's rights. The June 2017 assignment does not change or amend the complaint, but merely buttresses the October 2011 assignment. The

---

[4] At the outset, the Court notes that, contrary to Farmers's assertions, the June 2017 assignment is not a supplemental pleading. *See* Fed. R. Civ. P. 7(a). A pleading is a document filed with the Court; this is an assignment—nothing more.

Court will not prioritize form over substance. The June 2017 assignment may form the basis of Health Call's theory of liability.

Second, given the Sixth Circuit's liberal amendment rules, *see, e.g.*, *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999), if Health Call chooses, it may amend its complaint within ten days of this order being entered to clarify this issue.

For the foregoing reasons,

IT IS ORDERED that Farmers's motion for summary judgment is denied.

IT IS FURTHER ORDERED that Health Call may amend its complaint within ten days of this order being entered.

IT IS FURTHER ORDERED that Farmers's motion for leave to file a nonconforming brief is denied as moot.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 12, 2017
      Detroit, Michigan

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S Mail addresses disclosed on the Notice of Electronic filing on September 12, 2017.

      s/Teresa McGovern
      Case Manager Generalist