UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEALTH CALL OF DETROIT, INC.,

    Plaintiff,                                  Civil Action No. 16-CV-11345

vs.                                               HON. BERNARD A. FRIEDMAN

FARMERS INSURANCE EXCHANGE,

    Defendant.
_____/

## OPINION AND ORDER DENYING FARMERS INSURANCE EXCHANGE'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Farmers Insurance Exchange's motion for summary judgment [docket entry 69]. This motion is fully briefed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide it without a hearing.

## FACTS

In July 2011, six-year-old Jaden Sears was in a terrible car accident when a car going seventy miles per hour smashed into his family's car. He was thrown from the back seat underneath the dashboard. He suffered skull and sacral fractures and a hemorrhagic contusion in his right temporal lobe. Medics unsuccessfully tried to resuscitate him several times. He was airlifted to the University of Michigan Hospital, where he spent a week in a coma and was diagnosed with a severe traumatic brain injury. Because Jaden still suffers many side effects, his physicians prescribed 24-hour attendant care services, primarily for supervision purposes.

In October 2011, Jaden's mother Velma Sears-Roddy ("Sears")—acting on Jaden's behalf—assigned to Health Call "any rights [Jaden] may have as a result of Health Call providing services." Def.'s Mot. Ex. 2. This included the right to "collect any and all benefits." *Id.*

In July 2012, Sears—acting as Jaden's next friend—filed a complaint against Farmers, who was refusing to pay no-fault benefits. In January 2014, the case was settled, and Sears—acting on Jaden's behalf—signed a partial release of claims against Farmers. The release explicitly did not apply to Health Call's services. For the next year, Farmers paid for Jaden's attendant care. But in January 2015, Farmers sent a letter to Sears, stating that based on the analysis of its physician, Dr. O'Leary, it would no longer pay for Jaden's attendant care. In response, Jaden's longtime physician, Dr. Pelshaw, wrote to Farmers, explaining Jaden's need for attendant care, but to no avail.

In February 2015, Health Call began providing services to Jaden. In February 2016, Health Call filed the instant complaint against Farmers, asserting a violation of Michigan's No Fault Act ("the Act"). Health Call claimed the right to sue under the Act based on two theories: a contractual theory grounded in the 2011 assignment and a statutory theory grounded in the Act itself. Health Call's statutory cause of action had been recognized by the Michigan Court of Appeals for decades. In May 2017, however, the Michigan Supreme Court overruled that line of cases in *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 895 N.W.2d 490, 493 (Mich. 2017), stating "that healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act."

In June 2017, Sears signed another assignment of benefits to Health Call, which states: "In consideration for the services provided to [Jaden] by Health Call, [Jaden] assigns and transfers to Health Call all of [his] rights and interest in his[] insurance benefits for services rendered by Health Call" and "further grants to Health Call the full power and authority . . . to pursue claims directly against" Farmers. Def.'s Mot. Ex. 1.

2

The case was scheduled for trial in late March 2018. The morning of trial, however, the parties agreed that rather than try the case, they would file a "Stipulated Order and Partial Judgment" and have the Court decide the case on a motion for summary judgment. They stipulated that the motion would "argue the applicability of the 'one year back' rule [and] . . . whether HealthCall is entitled to interest . . . and/or attorney fees." Partial J. ¶ 3.

To set the stage, Farmers stipulated to failing to pay invoices "more than 30 days past due from the date Farmers received reasonable proof"; to a "partial judgment in the amount of $252,158.00 . . . in favor of Health Call and against Farmers, which represents the full amount of Health Call's principal damages for its claim brought pursuant to the No-Fault Act"; and to penalty interest and attorney fees, if the Court held that they were recoverable. *Id.* ¶¶ 1, 2, 5–6.

Critically, Farmers also stipulated that Health Call's "claim was raised pursuant to valid assignments from Velma Sears on behalf of Jaden Sears," that all of the Court's prior rulings "stand," and that the 2011 and 2017 assignments are "valid." *Id.* ¶¶ 1, 7.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states that any party moving for summary judgment must identify "each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## DISCUSSION

There is no genuine dispute as to the material facts—Farmers admits that it did not remit insurance benefits to Health Call for reasonably necessary medical services Health Call provided. They disagree only about whether Farmers is entitled to judgment as a matter of law.

Michigan law establishes a system of mandatory no-fault automobile insurance. Mich. Comp. Laws §§ 500.3101–3179. One subset of this insurance is personal protection insurance. *Id.* § 500.3105(1). "Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . without regard to fault." *Id.* § 500.3105(1)–(2). Personal protection benefits cover "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." *Bronson Methodist Hosp. v. Auto-Owners Ins. Co.*, 814 N.W.2d 670, 677–78 (Mich. 2012) (discussing § 500.3107(1)(a)).

**A. <u>One-Year-Back Rule</u>**

1. <u>Applying Mich. Comp. Laws § 500.3145(1) Directly to Health Call's Claim</u>

Farmers first argues that § 500.3145(1) bars Health Call's claim. Section 500.3145(1) states: "claimant[s] may not recover benefits for any portion of the loss incurred more than 1 year before the date on which the action was commenced." As Farmers notes, the Michigan Supreme Court has stated that § 500.1345(1)'s purpose is to limit "open-ended liability":

> The one-year-back rule codifies an integral part of the legislative compromise that is the no-fault act, and invalidating that compromise will threaten the continued fiscal soundness of our no-fault system. Given that Michigan is the only state with a no-fault automobile-injury reparations scheme with mandatory, unlimited, lifetime medical benefits, the Legislature adopted a unique approach to defining the temporal limitations for filing suit without allowing open-ended liability or time-barring claims before they accrue. The Legislature addressed this problem by enacting the one-year-back rule, which limits recovery to losses incurred within one year before suit was filed. Thus, the creation of MCL 500.3145(1) was the Legislature's reasonable and simple approach to resolving the problem of allowing a reasonable amount of time for pursuing a claim while protecting the fiscal integrity of the no-fault system.

*Joseph v. Auto Club Ins. Ass'n*, 815 N.W.2d 412, 423 (Mich. 2012).

4

Here, Health Call satisfies both the text and purpose of § 500.3145(1). Health Call commenced the instant action in February 2016 and seeks benefits back to February 2015. Further, Health Call, by giving Farmers notice in February 2016 that it was contesting Farmers's denial of benefits, and by seeking only one year's worth of unpaid benefits, satisfies § 500.3145(1)'s purpose of limiting open-ended liability. In Farmers's view, § 500.3145(1)'s purpose is to allow insurers to be confident that denials that occurred many years before will not be challenged. Farmers does not show how this case runs afoul of that purpose.

2. Health Call's Status as a Claimant Under § 500.3145(1)

Next, Farmers argues that the Court's § 500.3145(1) analysis should consider June 2017, not February 2016, as the date this action commenced because Health Call was not a legitimate claimant until it received the 2017 assignment. Farmers contends that under § 500.3145(1) claimants are only those who can state a legitimate claim when the complaint is filed, and in light of *Covenant*, Health Call was not a legitimate claimant until it received its assignment in June 2017.

The Court disagrees with Farmers's argument for two reasons. First, Farmers's definition of a claimant is wrong. The Michigan Supreme Court has defined a claimant under § 500.3145(1) not as someone who *can* state a *legitimate* claim, but more simply as someone who *does* state a claim. *Perkovic v. Zurich Am. Ins. Co.*, 893 N.W.2d 322, 327 (Mich. 2017) (quoting Merriam–Webster's Collegiate Dictionary (11th ed.) as stating that a "'claimant' is 'one that asserts a right or title,'" and that the "person who asserts a right or title is the party that ultimately makes a claim"). In short, a true claimant is one who asserts a claim, and determining whether a party is a true § 500.3145(1) claimant does not depend on the claim's legitimacy.

This definition makes sense given that § 500.3145(1)'s purpose is to limit damages, not to decide liability or whether a party owns a cause of action. Those decisions are governed by other rules and sections of the Act. In sum, because there is no danger of open-ended liability so long as the party asserting rights to no-fault benefits seeks damages incurred only in the year before it commenced suit, § 500.3145(1) will not bar its claim.

Second, even accepting Farmers's definition of a claimant, Health Call was a claimant when it commenced this action. *Covenant* applies both prospectively and retroactively, stripping currently litigating healthcare providers of their independent causes of action. But in February 2016, decades of Michigan Court of Appeals case law undisputedly gave healthcare providers an independent cause of action. When Health Call filed its suit in reliance on that case law, it was asserting a legitimate right that, at that time, it owned. *Accord Covenant Med. Ctr., Inc. v. Auto-Owners Ins. Co.*, No. 17-CV-11176, 2017 WL 4572327, at *1 (E.D. Mich. Oct. 13, 2017). Indeed, that Farmers neglected to challenge Health Call's status as a claimant until now indicates that it, too, believed at that time that Health Call had an independent cause of action.[1] Additionally, the complaint shows that Health Call commenced this action believing that even in the absence of its statutory theory, it owned the cause of action by virtue of the 2011 assignment, the validity of which Farmers concedes. Pl.'s Resp. p. 15.

Given all of this, the only questions for the Court under § 500.3145(1) are whether Health Call asserted a right (it did), when it made that claim (February 2016), and between what dates it claimed losses (February 2015 to February 2016). Because Health Call satisfies § 500.3145(1), the claim is not barred.

---

[1] Farmers argues that Health Call could have obtained an assignment at any time before *Covenant*. This argument, which implies that Health Call slept on its rights, is weak. Health Call had no way to know in February 2016 that the Michigan Supreme Court would remove its well-established, independent cause of action in May 2017.

### 3. The 2017 Assignment's Conveyance of Rights in Light of § 500.3145(1)

Farmers argues that § 500.3145(1) could bar Health Call's claim in yet another way. It contends that when Sears signed the 2017 assignment, under § 500.3145(1), Jaden could pursue only the benefits incurred after June 2016. And as noted above, Health Call provided no services—and therefore created no benefit claims—after March 2016. Farmers notes that under Michigan law, an assignee stands in the shoes of the assignor. Thus, it concludes, because Jaden had no rights in light of § 500.3145(1), he had nothing to assign, and the 2017 assignment conveyed nothing.

The Court disagrees. As noted above, Farmers, through the Partial Judgment, has already stipulated to the 2017 assignment's validity and cannot now challenge it.

"Under Michigan law, '[a]n assignment is a contract between the assignor and the assignee and is interpreted according to the rules of contract construction.'" *Macomb Interceptor Drain Drainage Dist. v. Kilpatrick*, 896 F. Supp. 2d 650, 658 (E.D. Mich. 2012) (quoting *Burkhart v. Lapham*, No. 291705, 2010 WL 4905568, at *2 (Mich. Ct. App. Dec. 2, 2010)). It is axiomatic that "a valid contract cannot be based upon the illusory promise of one party." *Ridge Runner Forestry v. Veneman*, 287 F.3d 1058, 1062 (Fed. Cir. 2002) (citing Restatement (Second) of Contracts § 71(1)). *See also Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 145 (6th Cir. 1983) (holding that if "the underlying contractual obligation is predicated on an illusory promise," the resulting "contract" is not valid). In Michigan, an illusory contract is "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation." *Employers Mut. Cas. Co. v. Helicon Assocs., Inc.*, No. 322215, 2017 WL 3925509, at *5 (Mich. Ct. App. Sept. 7, 2017). In sum, an assignment that fails to assign anything is an illusory contract and cannot be called "valid."

Here, Farmers stipulated multiple times as part of the Court's judgment that the 2011 and 2017 assignments are valid; that is, that they are not illusory and, thus, must convey something. But its motion argues that the 2017 assignment "did not assign *anything* under Michigan law," Def.'s Mot. pp. 11–12, and under Michigan law, an assignment that imposes no obligation is illusory and, therefore, invalid. Taking Farmers's stipulations and argument together, the 2017 assignment would be simultaneously valid and invalid. Because the Court accepts parties' stipulations as true, it cannot accept Farmers's argument.

To the extent Farmers contends that what the 2017 assignment conveyed is not pertinent to its validity, Farmers is incorrect. Because an assignment is a contract, to create a valid one, there must be offer, acceptance, and consideration. Consequently, whether the assignment conveys anything affects consideration, which goes to the heart of contract validity. Farmers tries to avoid this by admitting that the 2017 assignment is valid "from a contractual perspective," but urges the Court to conduct "a more pragmatic examination" of the assignment by addressing its "substantive aspects." Def.'s Mot. p. 10; Reply p. 2. This kind of analysis cannot be undertaken because an assignment is a contract, and every part of it must be viewed from a "contractual perspective."

A final comment is in order: The Michigan Supreme Court did not hand down *Covenant* to deliver insurance companies windfalls. Rather, it sought to correct the Michigan Court of Appeals's "erroneous interpretations" of the Act specifically in order to "further[] the rule of law." *Covenant*, 895 N.W.2d at 496. The rule of law is no less important here. Allowing an insurance company to escape paying benefits that it admits it owes—indeed, that it *contracted* to pay—does not further the rule of law, but undermines it. *See Estate of Grimmett v. Encompass Indem. Co.*, No. 14-14646, 2017 WL 5592897, at *9 (E.D. Mich. Nov. 21, 2017) (stating that

*Covenant* has given the insurance industry "an unexpected arrow in its quiver that" it is using "to the detriment of the broader purposes of the no-fault scheme").

   **B. Interest and Attorney Fees**

   Under Mich. Comp. Laws § 500.3142(3), an "overdue payment" of benefits "bears simple interest at the rate of 12% per annum." "[I]n an action for personal or property protection insurance benefits which are overdue," and where an "insurer unreasonably refused to pay the claim," § 500.3148(1) prescribes that the insurer must pay the claimant, "in addition to the benefits," a reasonable attorney fee. In short, if a claimant shows that overdue benefits were unreasonably withheld, he is entitled to interest and attorney fees.

   Farmers argues that even if the 2017 assignment's language did successfully assign to Health Call the right to benefits, it failed to assign rights to attorney fees or interest. Farmers contends that no-fault "penalty interest has a different purpose than other types of interest" awarded in lawsuits. Def.'s Mot. p. 19. In Farmers's view, penalty interest is "a substantive element" distinct from benefits, as shown by the fact that a jury must first award benefits before awarding interest. *Id.* at 19–20. Further, Farmers argues, because the Act includes a standalone provision allowing a claimant to seek attorney fees, which are awarded only if the insurer owes benefits, the attorney fees are also distinct from no-fault benefits. In short, any right to no-fault attorney fees or interest "is entirely separate and distinct from" a right to no-fault benefits. *Id.* at 21. Therefore, because the 2017 assignment fails to explicitly mention interest or attorney fees, Farmers says, Health Call cannot collect them.

   The 2017 assignment does not explicitly mention attorney fees or interest. It does, however, assign the "full power and authority . . . to pursue claims." Thus, the question is whether that language includes the right to seek attorney fees and interest.

9

The Court believes it does for three reasons. First, Farmers's argument fails to acknowledge the difference between a cause of action and damages. Although these are distinctly different concepts, Farmers conflates them, attempting to redefine two damages elements—interest and attorney fees—as causes of action.

Black's Law Dictionary (9th ed. 2009) defines "cause of action" as: "A group of operative facts giving rise to one or more bases for suing" or, "A legal theory of a lawsuit." In contrast, it defines "damages" as: "Money claimed by, or ordered to be paid to, a person as compensation for a loss or injury." *Damages*, Black's Law Dictionary (9th ed. 2009). And it defines "additional damages" as: "Damages usually provided by statute in addition to direct damages. Additional damages can include expenses resulting from the injury . . . or punitive damages." *Additional Damages*, *id.* In sum, a cause of action is the right to pursue a remedy; one remedy is damages, including statutory damages.

Here, the unpaid no-fault benefits are general damages, and no-fault interest and attorney fees are additional statutory damages provided by the Act. The Michigan Court of Appeals confirmed this in *Bonkowski v. Allstate Ins. Co.*, 761 N.W.2d 784, 797 (Mich. Ct. App. 2008), where it said that no-fault interest is merely "a substantive element of the damages." By definition then, no-fault interest and attorney fees are not separate causes of action; rather, they are simply two damages elements the Act provides to successful plaintiffs—individual pieces of a larger remedy.[2]

Farmers provides a strong textual analysis of the Act in support of this interpretation. Footnote 16 of its motion states:

> Michigan's Supreme Court has interpreted this statutory language as essentially one continuous thought, observing that the attorney

---

[2] The Court recognizes that this interpretation differs from that in *Saunders v. TJX Cos., Inc. FlexPlus Plan*, 293 F. Supp. 3d 716, 731 (E.D. Mich. 2017); the Court does not find *Saunders*'s interpretation persuasive.

> fees payable under section 3148(1) are only available from an insurer if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. *See Pirgu v. United Servs. Auto. Ass'n*, 884 N.W.2d 257, 260 (Mich. 2016). This Honorable Court, as a federal court sitting in diversity jurisdiction, is required to follow that reasoning. *See Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012).

The Court agrees with Farmers: Because interest and attorney fees flow directly from and are inextricably tied to benefits liability, reading the Act's language as "one continuous thought"—that is, without creating artificial divisions of rights—is the only reasonable way to read it. For example, § 500.3142(3) states that interest accrues specifically on the overdue payment. Separating into individual causes of action the benefits and interest that the Act explicitly ties together would be a strained, nonsensical reading.

Second, as the assignment is a contract, the Court must read it in context. Given the history of this case and the relationship between Jaden and Sears and Health Call, there is no reasonable dispute that Jaden intended to transfer to Health Call *all* of his no-fault rights. He had already done so in 2011. He would have no reason to—and Farmers has advanced no explanation of why he would—withhold from Health Call the rights to pursue attorney fees and interest.

Third, even if no-fault interest and attorney fees were independent causes of action, the 2017 assignment's language granting "full power" to pursue "all of [Jaden's] rights" transfers exactly what it says: *all* of Jaden's rights, including rights to interests and attorney fees. *See Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 346 (Mich. Ct. App. 2009) (quoting *Pritts v. J. I. Case Co.*, 310 N.W.2d 261, 265 (Mich. Ct. App. 1981)) ("The phrase 'any and all actual and potential claims' is very broad. '[T]here cannot be any broader classification than the word "all". In its ordinary and natural meaning, the word "all" leaves no room for exceptions.'"). *See also In re Pazdzierz* 718 F.3d 582, 587 (6th Cir. 2013) (quoting *Sweet v. Clay*,

49 N.W. 899, 901 (Mich. 1891) (stating that under Michigan law, "the right to whatever remedy the assignor has follows the assignment"). In no-fault cases, these "rights" to damages include the rights to seek interest and attorney fees.

For all of the foregoing reasons,

IT IS ORDERED that Farmers's motion for summary judgment is denied.

IT IS FURTHER ORDERED that Health Call is awarded penalty interest under § 500.3142 as stipulated in the partial judgment.

IT IS FURTHER ORDERED that Health Call may set out in a separate motion its claim for attorney fees as stipulated in the partial judgment.

Dated: June 14, 2018   s/Bernard A. Friedman
Detroit, Michigan   BERNARD A. FRIEDMAN
   SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 14, 2018.

s/Johnetta M. Curry-Williams
Case Manager